## OVIATT v. HOHNHOLTZ
(No. 1675; June 2, 1931; 299 Pac. 1037)

For the appellant there was a brief and oral argument by *C. P. Arnold,* of Laramie, Wyoming.

For the respondent there was a brief and oral argument by *C. M. Eby,* of Laramie, Wyoming.

KIMBALL, Chief Justice.

The plaintiff, claiming that a collision of his automobile with that of defendant was caused by defendant's negligence, sued to recover damages resulting from the collision. He asked $164.65 for damage to his automobile, and $1000 for personal injuries. The defendant answered by a general denial. The case was tried without a jury. Plaintiff was given judgment for $144.70, to cover the damage to his automobile, but nothing on account of the alleged injuries to his person. The defendant appeals.

The defendant contends that the evidence was insufficient to support the finding that the collision was caused by his negligence.

The accident occurred on the road from Laramie to the neighborhood where plaintiff and defendant live on adjoining ranches. The road is along foothills, and is hilly and winding. Except where it crosses narrow bridges, it is wide enough to permit cars to pass each other without difficulty, but cars are customarily driven in the one set of beaten tracks or ruts in the center of the road except when, in passing each other, it becomes necessary to turn from the tracks of travel. Because of cuts, curves and hills, a driver at some places along the road can not see an approaching car which he was about to meet until it is quite near.

On the day of the accident, the plaintiff, in his car with his wife and son, was going from Laramie to his ranch. The son was driving, and plaintiff sitting in the front seat beside the driver. Defendant, accompanied by his wife, was driving his car toward Laramie. Both drivers were experienced in handling automobiles, and thoroughly familiar with the road. The two cars collided near the top of a rather steep hill where, on account of the road curving around a cut bank, neither driver could see the approaching car until the cars were two or three car-lengths apart. For the plaintiff, who was going up the hill, the curve at the top was to the left; for the defendant, who was going down, the curve was to the right making it necessary for him to drive close to the cut bank in order to keep on his side of the road.

The testimony on behalf of plaintiff tended to show that at the time of the accident his car, ascending the hill, was to the right of the center of the road, leaving 12½ feet on his left for another car to pass. The road was about 24 feet in width at that point. Plaintiff's car in high gear could not climb the hill. The car was moving very slowly and the driver was in the act of shifting to a lower gear when defendant's car on the wrong side of the road was seen coming at a high rate of speed, estimated at 30 or more miles per hour, and "at an angle" or "crosswise," headed toward the cut bank on plaintiff's left. In what plaintiff describes as the "split part of a second" the cars were on each other,

and in passing the left front fender and wheel of plaintiff's car were struck by some part of the left rear of defendant's car.

Section 3 of Chapter 158, Session Laws of 1925 provides, among other things, that:

"No person shall operate a motor vehicle on any public highway outside of a city or town at a speed greater than is reasonable and proper having due regard for other traffic and the intended use and condition of the road, nor at a rate of speed as to endanger the life or limb of any person or animal. * * * Upon approaching * * * a sharp curve, or a steep descent, * * * the person operating the motor vehicle shall * * * reduce the speed of such motor vehicle to a reasonable rate, and shall not exceed such speed until entirely past such * * * curve (or) descent * * *."

We need not pause to consider whether the statute prescribes a standard of care different from that to which drivers of motor cars would be held without a statute.

If the trial judge believed plaintiff's evidence as to where and how the cars were being driven just before and at the time of the collision, there can be no doubt that he was justified in finding that the collision was caused by defendant's negligence in driving on a curving, descending road at an unreasonable rate of speed with his car, or at least the rear end of it, on the wrong side of the road, so that, on meeting plaintiff's car, defendant was unable to get his car to the right side of the road in time to avoid the crash.

The defendant and his wife testified that defendant at the time of the accident was driving carefully and slowly on the right side of the road close to the cut bank on the inside of the curve. Their testimony tended to prove that, if anyone was negligent, it was the driver of plaintiff's car. Counsel for defendant contends that the evidence of defendant on disputed points was corroborated, and that of plaintiff contradicted, by admitted physical facts, and, therefore,

the trial judge was not warranted in believing the evidence of the plaintiff. A "physical fact" relied on is the position of the cars after the accident. The plaintiff testified that his car by the impact was stopped and forced backward a distance of about 3 feet. Where it came to a rest it was 12½ feet from the cut bank on plaintiff's left. Defendant's car when stopped was between plaintiff's car and the cut bank. The front of defendant's car was against the bank, the rear a few feet from the bank. The car and the bank formed an angle of about 45 degrees. We think it clear without discussion that the location of the cars when they were stopped did not establish any fact that should have prevented the trial court from believing the plaintiff's evidence as to the cause of the collision.

The plaintiff's son testified that defendant's car, when seen approaching before the accident, was "coming broadside" and "sliding sideways" down the road. There was undisputed evidence that the road had a surface of gravel on which cars would not be likely to skid. It is argued that defendant's car sliding sideways down the road would have been contrary to natural law, and, therefore, the testimony to that fact would have to be disregarded. We may concede that the criticized evidence, with its literal meaning, would be entitled to no weight. The trial judge probably thought the witness formed an erroneous impression from his brief view of the approaching car headed diagonally across the road. We do not assume that the judge found that defendant's car was sliding sideways down the road. That finding was not necessary to support the judgment.

The petition alleged, among other things, that at the time of the accident plaintiff was riding along a highway "southwesterly" from, and "coming towards," Jelm, a town or village along the road. After the case was called for trial, before the introduction of evidence, plaintiff, over defendant's objection, was permitted to amend his petition by making it allege that he was riding "southeasterly" from, and "going from," Jelm. In the colloquy preceding the

ruling on the motion to amend, the judge, after indicating that the amendments would be permitted, said: "I think the defendant, if he is not prepared to meet such a change, is entitled to a continuance to prepare for it." And in ruling on the motion, the judge announced that "if the defendant wishes to apply for a continuance on the ground of surprise I would be very glad to consider such a motion." Counsel for defendant reserved an exception, but said he would "make no application for a continuance under the circumstances."

Though the petition showed by its allegations that some one other than plaintiff was driving his car, it contained the allegation that plaintiff was riding on the "left" hand side. During the trial, over defendant's objection, plaintiff was permitted to amend by substituting the word "right" for "left." In the discussion attending the granting of leave to make this amendment, counsel for defendant asserted that he was surprised, and contended that the allegation "as to where this plaintiff was sitting" was a "vital matter," but expressly declined to ask for a continuance.

The defendant contends that the trial court erred in permitting the above mentioned amendments. The code provides that "the court may, before or after judgment, in furtherance of justice, and on such terms as may be proper, amend any pleading * * * by correcting a mistake in the name of a party, or a mistake in any other respect, * * * or, when the amendment does not change substantially the claim or defense, by conforming the pleading or proceeding to the facts proved; * * *. The party applying to amend during the trial shall be required to show that the amendatory facts were unknown to him prior to the application, unless in its discretion the court shall relieve him from so doing." § 5707 Wyo. C. S. 1920. The court in every stage of an action must disregard any error or defect in the pleadings which does not affect the substantial rights of the adverse party, and no judgment shall be reversed or affected by reason of such error or defect. § 5708. No variance be-

tween allegation and proof is material "unless it has actually misled the adverse party to his prejudice in maintaining his action or defense on the merits." When it is alleged and shown that a party has been misled to his prejudice, the court may, nevertheless, order the pleading to be amended, "upon such terms as are just." § 5860. When the variance is not material the court may direct the fact to be found according to the evidence, and may order an immediate amendment without costs. § 5861. When the allegation of the claim to which proof is directed is unproved, not in some particular or particulars only, but in its general scope and meaning, it shall not be deemed a case of variance, but a failure of proof. § 5862. When either party amends a pleading, and the court is satisfied that the adverse party could not be ready for trial in consequence of the amendment, a continuance may be granted. § 5710.

There was at the trial no dispute as to the place of the accident, nor as to the general direction plaintiff's car was traveling, nor as to where plaintiff was sitting in his car. Allegations as to those matters were merely descriptive, and not material allegations that had to be established to prove the plaintiff's cause of action. We would probably be justified in saying that defendant, on reading the petition, must have known that the allegations which were changed by amendment were inserted in the original petition by mistake or carelessness of the pleader. The amendments did not "change substantially" the plaintiff's claim, or cause of action. If they had not been allowed, but evidence received to show the facts, the result would have been nothing more serious than a mere variance between allegation and proof, and it would perhaps have been impossible to find any ground for holding that the defendant was actually misled to his prejudice in making his defense on the merits. See, Chicago, B. & Q. R. Co. v. Pollock, 16 Wyo. 321, 329, 93 Pac. 847.

Defendant, referring to Section 5860, supra, complains because the amendments were allowed without giving him

"such terms as are just." But no terms were asked or even suggested. There is nothing to show that the amendments caused any additional costs to be taxed or expenses incurred. The defendant did not want a continuance. He does not now tell us what "terms" would have been just.

We are of opinion the trial judge did not err in permitting the amendments of the petition.

The judgment will be affirmed.

BLUME and RINER, JJ., concur.